Mod AO 442 (09/13) Arrest Warrant     AUSA Name & Telno:  Jacob R. Fiddelman, Tel: 212-637-1042

# UNITED STATES DISTRICT COURT
for the
## Southern District of New York

United States of America
v.

JOHN NOVOA

Defendant

)
)
)
)
)
)
)

Case No. **19 MAG 11699**

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    JOHN NOVOA                                                                                                   ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment          ❑ Superseding Indictment          ❑ Information          ❑ Superseding Information          ☑ Complaint
❑ Probation Violation Petition          ❑ Supervised Release Violation Petition          ❑ Violation Notice          ❑ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1349 (bank and wire fraud conspiracy)
18 U.S.C. § 1028A (aggravated identity theft)

Date:      12/12/2019

_____
*Issuing officer's signature*

City and state:     New York, NY

Hon. Sarah L. Cave, USMJ
*Printed name and title*

| Return | |
|---|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . | |
| Date: _____ | _____ *Arresting officer's signature* |
| | _____ *Printed name and title* |

**19-4024-MJ-O'SULLIVAN**

19 MAG 11633

Approved: _____
Jacob R. Fiddelman
Assistant United States Attorney

Before:   THE HONORABLE SARAH L. CAVE
          United States Magistrate Judge
          Southern District of New York

FILED BY_____YR_____D.C.

Dec 18, 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

- - - - - - - - - - - - - - - - - - - - X
                                        :
UNITED STATES OF AMERICA                :   **SEALED COMPLAINT**
                                        :
          - v. -                        :   Violations of
                                        :   18 U.S.C. §§ 1349,
ARIK LEV,                               :   1028A, and 2
IVAN MAGIDOV, and                       :
JOHN NOVOA,                             :   COUNTY OF OFFENSE:
                                        :   NEW YORK
                  Defendants.           :
                                        :
- - - - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

     MICHAEL BIRLEY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE
(Conspiracy to Commit Bank Fraud and Wire Fraud)

     1.   From at least in or about January 2018 up to and including at least in or about November 2019, in the Southern District of New York and elsewhere, ARIK LEV, IVAN MAGIDOV, and JOHN NOVOA, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344.

     2.   It was a part and object of the conspiracy that ARIK LEV, IVAN MAGIDOV, and JOHN NOVOA, the defendants, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means

of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

3.  It was a further part and object of the conspiracy that ARIK LEV, IVAN MAGIDOV, and JOHN NOVOA, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

COUNT TWO
(Aggravated Identity Theft)

4.  From at least in or about January 2018 up to and including at least in or about November 2019, in the Southern District of New York and elsewhere, ARIK LEV, IVAN MAGIDOV, and JOHN NOVOA, the defendants, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, LEV, MAGIDOV, and NOVOA used the names, purported signatures, and other identifying information of multiple individuals for the purpose of furthering a scheme to defraud financial institutions in connection with automobile loans, during and relation to the conspiracy to commit bank fraud and wire fraud charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

5.  I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include

2

all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

6.    Since late 2018, I have been involved in an investigation of a fraudulent scheme related to the purchase of automobiles on credit involving ARIK LEV, IVAN MAGIDOV, and JOHN NOVOA, the defendants, and "E Cars Brooklyn," an automobile dealership in Brooklyn, New York, with which they are associated. Specifically, based on the investigation and as detailed below, LEV, MAGIDOV, and NOVOA, along with others known and unknown, fraudulently obtained and assisted others in obtaining almost $1 million in loans from various banks and other lending institutions for the purchase of new, high-end automobiles. Among other things, to accomplish this fraud, LEV, MAGIDOV, and NOVOA, among others, prepared, coordinated, and caused to be submitted applications and supporting documentation for automobile loans containing false or misleading information in order to induce lenders to make loans to persons to whom, and on terms to which, the lenders otherwise would not have agreed.  These purchasers, or "straw buyers," never intended to use the vehicles for their own personal use, failed to disclose to the lenders other vehicles for which they were simultaneously taking out loans, and relinquished their interest in and control over the vehicles to LEV, MAGIDOV, and NOVOA after the closing of the purchase transactions.

7.    Based on the investigation and as detailed below, I have learned, among other things, that the scheme described herein involved at least two straw buyers, the purchase of at least nine high-end vehicles, and almost $1 million in fraudulently obtained loans from a number of financial institution victims. Substantially all of the fraudulently induced loans went into default.

<u>Background on Automobile Financing</u>

8.    Based on my participation in the investigation, my conversations with other law enforcement agents  and others, my review of bank records and other documents, and my training and experience, I have learned the following, in substance and in part:

a.    When individual consumers and businesses purchase vehicles from automobile dealerships, they typically have the option, if they qualify, of borrowing some part of the purchase price of the vehicle from a lender. These lenders are typically

3

financial institutions, including institutions whose deposits are insured by the Federal Deposit Insurance Corporation ("FDIC").

b. To apply for this financing, consumers usually submit applications through automobile dealerships at or near the time of the purchase of the vehicle. Typically, a consumer seeking to finance the purchase of a vehicle will meet with employees of the dealership, who will provide the consumer with an automobile loan application. Sometimes, the dealership employees will interview the consumer and complete the application on the consumer's behalf. On other occasions, the consumer will complete the application himself or herself. In either case, the consumer is generally required to sign the application and attest to the accuracy of the information contained therein.

c. Automobile loan applications usually ask for personal and financial information regarding the purchaser of the vehicle, including, among other things: the consumer's age, occupation, address, credit history, income, assets, and liabilities. One of the reasons that financial institutions request this information is to evaluate the consumer's ability to repay the loan. Thus, for example, information concerning a consumer's liabilities may alter the financial institution's view as to the suitability of the consumer for a particular loan or the interest rate to be charged for such a loan.

d. Automobile loan applications also typically require the applicant to indicate whether the vehicle is for personal or commercial use. Generally, because vehicles that are used for commercial purposes are subject to additional wear and risk, lenders charge a higher interest rate and require other different, more protective financial terms when financing the purchase of a vehicle to be used for commercial purposes. As a result, many dealerships and lenders require commercial purchasers of vehicles, like livery cab or delivery companies, to buy the vehicles as part of a "fleet deal" involving different (usually less favorable) financing and insurance terms than those offered to personal-use consumers. Personal-use purchasers are therefore usually required to represent that the vehicle is being purchased for personal use and will not be rented out or otherwise used for commercial purposes without the consent of the lender.

Straw Buyer-1

9. Based on my participation in the investigation, including my interviews of a straw purchaser involved in the scheme described herein ("Straw Buyer-1") and other witnesses, my review of bank records, communications, and other documents, and my

4

conversations with other law enforcement agents, I have learned the following, in substance and in part:

    a.    In late 2017 and early 2018, Straw Buyer-1 was looking for funding for a business venture in which Straw Buyer-1 was engaged. After various inquiries, Straw Buyer-1 was put in contact with JOHN NOVOA, the defendant, who was introduced to Straw Buyer-1 as a salesperson with the E Cars Brooklyn car dealership. NOVOA proposed to Straw Buyer-1, in substance and in part, that Straw Buyer-1 could partner with E Cars Brooklyn to assist in purchasing high-end automobiles using Straw Buyer-1's good credit. NOVOA explained, in substance and in part, that E Cars Brooklyn could quickly resell, or "flip," high-end automobiles in short order but needed assistance purchasing the vehicles in the first instance. NOVOA promised Straw Buyer-1, in substance and in part, that E Cars Brooklyn would pay the financing on the vehicles, and Straw Buyer-1 would be paid $10,000 per vehicle purchased using Straw Buyer-1's credit.

    b.    Straw Buyer-1 agreed to participate in the scheme, and NOVOA put Straw Buyer-1 in touch with ARIK LEV and IVAN MAGIDOV, the defendants. NOVOA and LEV gave Straw Buyer-1 a set of contracts for Straw Buyer-1 to sign, but never provided Straw Buyer-1 with a copy of the contracts.

    c.    In or about January and February 2018, false loan applications were submitted on behalf of Straw Buyer-1 in connection with the purchase of at least four high-end vehicles from various dealerships in New Jersey. Bank records, including financing application records, reflect, in substance and in part, that Straw Buyer-1 financed a total of approximately $502,731.00 through four different financial institutions located in various states across the country in connection with the purchase of the above-described vehicles. In each loan application, which LEV, MAGIDOV, and NOVOA participated in preparing, Straw Buyer-1 represented that each vehicle was for Straw Buyer-1's personal use and failed to disclose the loans on the other vehicles that Straw Buyer-1 had taken out. These loan applications were then transmitted to the various financial institutions via interstate wire communications.

    d.    These purchases usually involved personal appearance by Straw Buyer-1 at each dealership, accompanied by LEV or NOVOA, for which purpose LEV and NOVOA would travel through the Southern District of New York.

    e.    Bank records reflect, in substance and in part, that Straw Buyer-1 received $30,000 from "Rent Your Own 26 LLC,"

a business entity associated with E Cars Brooklyn and LEV, MAGIDOV, and NOVOA, the defendants, for participation in the scheme.

       f.    Straw Buyer-1 never took possession of any of the purchased vehicles.  E Cars Brooklyn or associated entities took direct possession of the vehicles after each purchase.

<u>Straw Buyer-2</u>

      10.   Based on my participation in the investigation, including my interviews of a straw purchaser involved in the scheme described herein ("Straw Buyer-2") and other witnesses, my review of bank records, communications, and other documents, and my conversations with other law enforcement agents, I have learned the following, in substance and in part:

       a.    In late 2017 and early 2018, Straw Buyer-2 was also looking for funding for a business venture in which Straw Buyer-2 was engaged.  After various inquiries, Straw Buyer-2 was put in contact with JOHN NOVOA, the defendant, who was introduced to Straw Buyer-2 as a salesperson with the E Cars Brooklyn car dealership. NOVOA similarly proposed to Straw Buyer-2, in substance and in part, that Straw Buyer-2 could partner with E Cars Brooklyn in a similar manner as that described above with respect to Straw Buyer-1.

       b.    Straw Buyer-2 agreed to participate in the scheme, and NOVOA put Straw Buyer-2 in touch with ARIK LEV and IVAN MAGIDOV, the defendants.  At one point, NOVOA and LEV gave Straw Buyer-2 a set of contracts for Straw Buyer-2 to sign, which contracts were countersigned by NOVOA.  In sum and substance, the contracts reflect the above-described arrangement for five high-end vehicles: each vehicle would be purchased under Straw Buyer-2's name but funded by Rent Your Own 26 LLC.  Each vehicle would be held in the possession of Rent Your Own 26, which would be responsible for the monthly financing payments on the vehicles as well as parking tickets or traffic infractions.  In exchange, Straw Buyer-2 would be paid $10,000 for each vehicle.

       c.    In or about February and March 2018, false loan applications were submitted on behalf of Straw Buyer-2 in connection with the purchase or lease of at least five high-end vehicles from various dealerships in New Jersey and Brooklyn, New York.  Bank records, including financing application records, reflect, in substance and in part, that Straw Buyer-2 financed a total of approximately $464,530 and took on a lease repayment obligation of approximately $110,893.20 through five different financial institutions located in various states across the

country in connection with the purchase of the above-described vehicles. In each loan or lease application, which LEV, MAGIDOV, and NOVOA participated in preparing, Straw Buyer-2 represented that each vehicle was for Straw Buyer-2's personal use and failed to disclose the loans on the other vehicles that Straw Buyer-2 had taken out. These loan applications, and the resulting payments by the financial institutions to the dealerships, were transmitted via interstate wire communications.

        d. MAGIDOV was Straw Buyer-2's principal contact with respect to the financial paperwork and other arrangements. MAGIDOV would often contact Straw Buyer-2 by telephone and text message to ask questions regarding Straw Buyer-2's personal information, such as date of birth, in connection with filling out financial or other paperwork in connection with the scheme described herein.

        e. These purchases usually involved personal appearance by Straw Buyer-2 at each dealership, accompanied by LEV or NOVOA, for which purpose Straw Buyer-2, LEV, MAGIDOV, and/or NOVOA would travel through the Southern District of New York.

        f. For example, in one instance, on a particular date in or about February 2018, Straw Buyer-2 purchased a Ferrari directly from E Cars Brooklyn in furtherance of the scheme described herein. MAGIDOV was present and is listed on the purchase paperwork as the sales representative involved in the transaction. A review of MAGIDOV'S publicly viewable profile on the Facebook social media network reflects that MAGIDOV posted a photograph of himself behind the wheel of a Ferrari on or about the same date on which Straw Buyer-2 purchased the Ferrari.

        g. At least one of the loan applications, which was prepared and submitted by LEV, MAGIDOV, and NOVOA on behalf of Straw Buyer-2, includes a forged Internal Revenue Service Form W-2, purporting to represent that in 2017, Straw Buyer-2 earned a substantially higher salary than Straw Buyer-2 in fact earned. In truth and in fact, Straw Buyer-2 did not earn income from the listed employer in 2017, and no Form W-2 was generated for Straw Buyer-2 for 2017 from the listed employer.

        h. Bank records reflect, in substance and in part, that Straw Buyer-2 received $50,000 from Rent Your Own 26 LLC for participation in the scheme.

        i. Straw Buyer-2 never took possession of any of the purchased vehicles. E Cars Brooklyn or associated entities took direct possession of the vehicles after each purchase. For example, on a particular date in or about February 2018, Straw

Buyer-2 purchased a vehicle from a dealership located in New Jersey. MAGIDOV was present at the transaction and drove the newly purchased vehicle off the lot at the conclusion of the transaction, even though the transaction was a purchase by Straw Buyer-2 of the vehicle in question for Straw Buyer-2's personal use.

### Continued Fraudulent Conduct after the Straw Purchases

11. Based on my participation in the investigation, including my interviews of Straw Buyer-1, Straw Buyer-2, and other witnesses, my review of bank records, electronic communications, and other documents, and my conversations with other law enforcement agents, I have learned the following, in substance and in part:

a. In the months following purchase of the above-described vehicles, Straw Buyer-1 and Straw Buyer-2 received numerous toll bills, traffic violations, and insurance bills indicating that vehicles they had purchased were being actively driven by others. In each instance, Straw Buyer-1 and Straw Buyer-2 would forward the bills via text message or other electronic communications to ARIK LEV, IVAN MAGIDOV, and/or JOHN NOVOA, the defendants, for payment.

b. Each time Straw Buyer-1 and Straw Buyer-2 received monthly financing bills, they would similarly forward them to LEV, MAGIDOV, and/or NOVOA.

c. LEV, MAGIDOV, and NOVOA did not pay the financing charges as promised, and each of the loans went into default.

d. In or about the second half of 2018, Straw Buyer-2 had conversations with NOVOA in which NOVOA stated, in substance and in part, that MAGIDOV and LEV were renting the vehicles out to others for profit. NOVOA also stated, in substance and in part, that LEV owed NOVOA $100,000 for NOVOA's role in obtaining the vehicles through Straw Buyer-1 and Straw Buyer-2.

e. Based on a review of publicly available information, I am aware that the entity with which Straw Buyer-2 signed contracts and from which Straw Buyer-1 and Straw Buyer-2 received payment, Rent Your Own 26 LLC, is in the business of renting out luxury vehicles to the public.

f. Accordingly, and based on my training and experience, including my familiarity with schemes to defraud of the kind described herein, it is my belief that LEV, MAGIDOV, and NOVOA either resold the vehicles or used the vehicles for short-

8

term rentals or leases to the public at large, in violation of the terms of the financing agreements for the vehicles, leaving Straw Buyer-1 and Straw Buyer-2 to repay the financing obligations, and had fraudulently intended to do so from the outset.

12.   Based on my conversations with an investigator for one of the financial institutions described above and my review of a recorded phone call and other communications, I have learned, in substance and in part, that in or about July 2018, a representative of one of the financial institutions that had financed some of the vehicle purchases described above spoke with ARIK LEV, the defendant, by telephone. During that call, which was recorded, LEV admitted, in substance and in part, that he had paid the down-payments on a number of the vehicle purchases; that he had possession of said vehicles; and that Straw Buyer-1 and Straw Buyer-2 had never taken possession of the vehicles they purchased. LEV also admitted, in substance and in part, that he had paid each straw buyer $10,000 per car and that he was responsible for making the payments on the financing.

### FDIC Insurance

13.   Based on my review of an FDIC database, I am aware that the deposits of almost all of the banks involved in lending money to Straw Buyer-1 and Straw Buyer-2 for the vehicle purchases described above were insured by the FDIC at all times relevant to the events described above.

WHEREFORE, I respectfully request that warrants be issued for the arrest of ARIK LEV, IVAN MAGIDOV, and JOHN NOVOA, the defendants, and that they be arrested and imprisoned or bailed, as the case may be.

MICHAEL BIRLEY
Special Agent
Federal Bureau of Investigation

Sworn to before me, this
12th day of December, 2019

THE HONORABLE SARAH L. CAVE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9